# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

KIMBERLY R. DUKES,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

Case No. 3:16-cv-00502-AA
OPINION AND ORDER

AIKEN, Judge:

Plaintiff Kimberly Dukes brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

## BACKGROUND

On May 9, 2012, the Commissioner denied plaintiff's application for SSI and DIB. Tr. 140–49. In that application, plaintiff had alleged disability beginning June 1, 2007. Tr. 140. On

Page 1 – OPINION AND ORDER

January 17, 2013, plaintiff filed a second set of applications for SSI and DIB, again alleging disability beginning June 1, 2007. Tr. 304–18. That second set of applications is under review in this decision. Plaintiff alleged she suffered from sciatica due to severe anteversion of the legs, anxiety, panic disorder, back spasms, and chronic knee pain. Tr. 356. Her applications were denied initially and upon reconsideration. Tr. 161–83, 187–224.

On June 27, 2014, plaintiff appeared at a hearing. Tr. 45–101. She elected to proceed unrepresented at the hearing, rejecting the ALJ's offer to continue the hearing to permit her time to obtain counsel. Tr. 47, 49. Following the hearing, the ALJ found plaintiff not disabled and denied her claim. Tr. 24–37. The Appeals Council denied review, and plaintiff filed a complaint in this Court. Tr. 1–2.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**COMMISSIONER'S DECISION**

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "bilateral femur anteversion, pain disorder, and post traumatic stress disorder (PTSD)[.]" Tr. 28; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). The ALJ acknowledged medical evidence of affective disorder, attention deficit hyperactivity disorder, and mild right greater than left hip dysplasia. Tr. 28. However, the ALJ found those conditions non-severe based on a determination that they "were either controlled, transient, or did not result in significant functional limitations for a continuous 12-month period." Tr. 28.

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity to

perform light work as defined in 20 [C.F.R. §] 404.1567(b) and [20 C.F.R. §] 416.967(b) except: She can lift, carry, push and pull 20 pounds occasionally and

10 pounds frequently. She can stand and walk for two hours out of an eight-hour day. She has no limitations on sitting. She can occasionally climb ramps and stairs but should not climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can understand and remember simple instructions and complete simple, routine tasks for a normal workday and workweek with normal breaks. She should have only occasional, brief, superficial interactions with the general public and can have frequent interactions with coworkers and supervisors.

Tr. 29–30; *see* 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). At step four, the ALJ concluded plaintiff would be unable to perform any past relevant work. Tr. 35; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy: garment sorter, laundry sorter, and marker. Tr. 36; 20 C.F.R. §§ 404.1520(a)(4)(v), (g); *id.* §§ 416.920(a)(4)(v), (g). Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits. Tr. 37.

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) discrediting plaintiff's testimony about the severity of her symptoms without legally sufficient justification; (2) improperly weighing the medical evidence; (3) rejecting lay witness testimony without providing reasons germane to each witness; and (4) failing to formulate an RFC that includes all her limitations. I address each allegation of error in turn.[1]

---

[1] Plaintiff also alleges error at steps two and three of the five-step evaluation process, but neither allegation of error supports reversal here. With respect to step two and the classification of impairments as severe or not severe, any error was harmless because the ALJ did not rule out any functional limitations due to the absence of an underlying impairment that could cause the limitation. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an error to deem an impairment severe is harmless when the ALJ considers any limitations caused by that impairment in formulating the RFC). With respect to step three and the ALJ's failure to consider the combined effect of plaintiff's mental and physical impairments, plaintiff has waived any challenge because she did not put forth a listing theory, either before the ALJ or in her briefs on appeal. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

Preliminarily, I review the law concerning the effect of a prior finding that a plaintiff is not disabled. Principles of claim and issue preclusion apply in the Social Security context, "although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). The doctrine "retains full force when applied to adjudications of past facts," meaning that denial of a disability claim generally precludes relitigation of the issue of disability with respect to the time period leading up to the decision date. *Stuckey v. Weinberger*, 488 F.2d 904, 911 (9th Cir. 1973) (quotation marks omitted). With respect to the time period after the decision date, a prior denial is not binding but instead creates a presumption of continuing nondisability. *Lester v. Chater*, 81 F.3d 821, 827–28 (9th Cir. 1996). In order to overcome that presumption, the plaintiff "must prove 'changed circumstances' indicating a greater disability," *Chavez*, 844 F.2d at 693 (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)), or raise a "new issue, such as the existence of an impairment not considered in the previous application," *Lester*, 81 F.3d at 827. Here, the ALJ concluded that the presumption of continuing nondisability had been rebutted with respect to mental limitations but not with respect to physical limitations. Tr. 24.

I.    *Plaintiff's Symptom Testimony*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The

Page 5 – OPINION AND ORDER

reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In an adult function report completed in February 2013, plaintiff explained that back spasms (onset July 2007) and sciatica (onset January 2011) exacerbated longstanding mental and physical health problems. Tr. 372. She stated that she was unable to care for herself without assistance. She wrote that she was walking about four miles each day, although she noted that she experienced pain as a result. Tr. 381. Due to a three-week sciatic flare, she was experiencing a pain level of nine to ten out of ten eighty-five percent of the time. Tr. 397. The pain was not helped by medication.

In the April 2012 hearing that preceded plaintiff's first disability denial, she testified that she was unable to hold down a full-time job because her hips "go out of joint a lot" and her legs "totally lock up" on her. Tr. 105. She stated that since she was a child, her feet have "skidded," she has tripped over her own feet, and her kneecaps have fallen asleep. Tr. 109. She explained that due to a "shooting, electric" pain through her legs and buttocks she began using a walker in November 2011. Tr. 109. She stated that she could sit for thirty minutes at a time, stand unsupported for up to an hour, stand for a total of five hours of an eight-hour workday, and sit for four hours of an eight-hour workday. Tr. 114, 115, 118. She was unable to lift a gallon of milk. Tr. 119.

In the June 2014 hearing, plaintiff testified that she has "always lacked tact," but that her interpersonal difficulties have gotten "massively worse since the chronic pain jumped up in

2007, and now, I literally cannot seem to control what comes out of my mouth." Tr. 64. She has to take pills "to knock herself out in order not to injure people where I live." Tr. 64. She conceded that injections have helped her back pain but stated that her legs still "randomly go out" and her back will seize up. Tr. 64. The injections manage her back pain enough that she has stopped using "marijuana-oiled food" as a pain reliever. Tr. 68. She takes medications for back spasms, nerve pain, anxiety, anger outbursts, depression, ADHD, and focusing. Tr. 66. She rated the medications as seventy-five percent effective, Tr. 66, but notes they have side effects, including fatigue and dizziness, Tr. 67.

Plaintiff occasionally sweeps, but otherwise she is unable to do chores. Tr. 69. Twice a week, she uses her walker for one to two hours at a time to pick up trash around the homeless camp where she and her husband live. Tr. 69. She goes grocery shopping with her husband and occasionally to the movies. Tr. 70. When she has access to the internet, she will play Facebook games such as Farmville for four to six hours at a time. Tr. 71. She reads a lot. Tr. 72.

The ALJ found that plaintiff's medically determinable impairments reasonably could be expected to produce some degree of the symptoms alleged. Tr. 30. However, the ALJ found plaintiff's statements about the severity of her symptoms not entirely credible for several reasons.

First, the ALJ found that the objective medical evidence did not support plaintiff's allegations regarding her physical limitations. Tr. 30. The ALJ specifically opined that plaintiff had introduced insufficient evidence that her physical limitations had worsened since the May 2012 disability determination. Standing alone, the absence of corroborating objective medical evidence is insufficient to support discrediting subjective symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may, however, consider the absence of

Page 7 – OPINION AND ORDER

such evidence if she also identifies other reasons to question the claimant's statements about symptom severity. Here, the ALJ identified several records classifying plaintiff's spinal degeneration as "mild" and identified several other reasons to doubt plaintiff's testimony about her symptoms.

Nevertheless, I cannot conclude that absence of medical evidence is a convincing reason to discredit plaintiff's symptom statements. As explained in more detail in Section II.A of this opinion, the ALJ did not address several medical records relevant to plaintiff's musculoskeletal pain, including a written evaluation completed by a physiatrist after the May 2012 decision. That evaluation, if credited as true, could support a finding that plaintiff's physical limitations have worsened since the prior denial. The ALJ's absence-of-evidence finding therefore rests on an unresolved conflict in the evidentiary record and cannot support the decision to give less weight to plaintiff's symptom testimony.

Second, the ALJ noted evidence that plaintiff exaggerated symptoms related to her leg and ankle problems. That evidence comes from the opinion of Kim Webster, M.D., who evaluated plaintiff in May 2013. Dr. Webster wrote:

> She moves around the clinic with a very inconsistent gait. At times she kind of drags her right leg with this very exaggerated limp. At other times she is walking with her toes in at about 45 degrees, at other times a relatively normal gait. . . . She is able to get on and off the examination table and go from a sitting to supine and supine to sitting position without difficulty. There is no real poor effort or inconsistencies other than the gait.
>
> . . .
>
> Station varies also. At times she stands with her legs extraordinarily internally rotated, but my overall impression was that she actually had relatively good internal/external rotation in the hips and that her gait appeared to me when she walked with her legs internally rotated was on purpose and seemed exaggerated, as did station at times.

Tr. 764–65. Dr. Webster also found "no consistent objective medical evidence" that plaintiff's use of a walker was necessary, Tr. 765; opined that the examination's objective results indicated "that the claimant significantly exaggerated problems that she might have" with regard to her legs, Tr. 767; and noted "rather significant" knee and ankle problems compared to "relatively normal musculoskeletal examination," Tr. 768.

The parties disagree on how broadly evidence of symptom exaggeration may be applied to discredit a claimant's testimony. Their dispute centers on SSR 16-3p, which directs that ALJs "will not asses an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation" because the weight ALJs give symptom testimony does not turns on whether the claimant "is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. As such, ALJs "must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments[,]" *id.*, and "more closely follow [SSA] regulatory language regarding symptom evaluation," *id.* at *1 n.1.

SSR 16-3p, which became effective March 16, 2016, superseded SSR 96-7. The ALJ issued her decision before SSR 16-3p's effective date. Plaintiff contends that SSR 16-3p retroactively precludes the ALJ from making any assessment regarding character for truthfulness. Defendant contends that to the extent SSR 16-3p prohibits ALJs from generally assessing a claimant's propensity to lie, it represents a substantive change in the law and cannot be applied retroactively.

I conclude that SSR 16-3p applies in this case.[2] SSR 16-3p's policy of eschewing global credibility determinations in favor of a more focused evaluation of subjective symptom statements is wholly consistent with SSR 96-7p's proscription that "credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." SSR 96-7p, 1996 WL 374186, at *4. Even more importantly, SSR 16-3p closely tracks the Commissioner's regulations governing the evaluation of subjective symptom testimony. SSR 16-3p should be applied retroactively because it clarifies "an unsettled or confusing area of the law" rather than announcing a substantive change in the law. *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) (acknowledging the Seventh Circuit's *Pope* decision but finding it unnecessary to decide the question of retroactivity where

---

[2] Most of this Court's decisions since SSR 16-3p's effective date have found it unnecessary to decide whether the guidance applies retroactively because the ALJ's treatment of the plaintiff's symptom testimony would be upheld whether or not SSR 16-3p applied. *See, e.g.*, *Upham v. Berryhill*, 2017 WL 452007, at *7, n.2 (D. Or. Feb. 2, 2017); *Hoy v. Comm'r of Soc. Sec.*, 2016 WL 8198528, at *4 (D. Or. Dec. 16, 2016), *report and recommendation adopted sub nom.* 2017 WL 462008 (D. Or. Feb. 2, 2017); *Anderson v. Colvin*, — F. Supp. 3d —, 2016 WL 7013472, at *10 n.8 (D. Or. Nov. 30, 2016); *Willis v. Colvin*, 2016 WL 4942000, at *3 n.3 (D. Or. Sept. 15, 2016); *Dunkel v. Colvin*, 2016 WL 4034800, at *6 n.3 (D. Or. July 26, 2016); *Chavez v. Colvin*, 2016 WL 8731796, at *6 n.1 (D. Or. July 25, 2016). The decisions that decide the question of retroactivity are split. *Compare, e.g.*, *Mesecher v. Colvin*, 2016 WL6666800, at *4 (D. Or. Nov. 10, 2016) (holding that SSR 16-3p is a clarification of preexisting policy that applies retroactively); *Messmer v. Colvin*, 2016 WL 5339728, at *3 (D. Or. Sept. 23, 2016) (applying SSR 16-3p to a 2013 denial of benefits without addressing retroactivity); *and Bowlin v. Colvin*, 2016 WL 5339591, at *8 (D. Or. Aug. 18, 2016) (same), *report and recommendation adopted*, 2016 WL 5339578 (D. Or. Sept. 21, 2016) *with, e.g.*, *Bahles v. Comm'r Soc. Sec. Admin.*, 2017 WL 1293982, at *3 (D. Or. Apr. 4, 2017) (determining that SSR 16-3p "does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); *Spain v. Colvin*, 2017 WL 517795, at *5 (D. Or. Feb. 8, 2017) (declining to apply SSR 16-3p retroactively); *and Colton v. Colvin*, 2016 WL 7015669, at *4 (D. Or. Sept. 28, 2016) (same), *report and recommendation adopted*, 2016 WL 6986504 (D. Or. Nov. 28, 2016).

"the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit caselaw, both of which clearly apply here.")

However, SSR 16-3p does not sweep so broadly as plaintiff contends. SSR 16-3p clarifies that an ALJ cannot use isolated instances of lying or evasiveness to discredit all of a plaintiff's statements. *See, e.g., Senser v. Colvin*, 2017 WL 253847, *3 (D. Or. Jan. 19, 2017) ("[T]he fact that [the plaintiff] was not forthcoming about illegal drug use and her criminal history does not support the inference that she exaggerated her symptom testimony," particularly where "[t]he medical records do not contain evidence of malingering on any other topic.") But an ALJ retains the power under SSR 16-3p to consider evidence that a plaintiff is exaggerating her symptoms. *See, e.g., Dubrawasky v. Berryhill*, 2017 WL 1758054, *6 (D. Or. May 2, 2017) (ALJ permissibly gave plaintiff's pain testimony less weight based on evidence that plaintiff exaggerated her pain symptoms to her treating provider in order to obtain pain medication); *Mendenhall v. Colvin*, 2016 WL 4250214, *4 (C.D. Ill. Aug. 10, 2016) (contrasting a wholesale attack on a claimant's character for truthfulness with "a reasoned explanation of why [the claimant] exaggerated his back pain."). Here, the ALJ did not make a global credibility finding; she noted an examining doctor's opinion that plaintiff exaggerated her back, leg, and ankle symptoms. That is a clear, convincing reason to give less weight to plaintiff's testimony about her back, leg, and ankle symptoms.

Third, the ALJ found plaintiff's statements about her physical limitations inconsistent with her ability, at the hearing, to easily open "very heavy" doors to admit a witness. Tr. 31. The Ninth Circuit disapproves of "sit and squirm" jurisprudence, and ALJs may not discredit a claimant's testimony about pain based on a failure to "manifest external symptoms" of pain at the hearing. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Here, however, the ALJ

Page 11 – OPINION AND ORDER

observed plaintiff opening a heavy door, and found that ability inconsistent with plaintiff's testimony about the severity of her physical limitations. Such reasoning has been expressly endorsed by the Ninth Circuit as a clear, convincing reason to doubt symptom testimony. *Id.*

Fourth, the ALJ noted evidence in the medical record that plaintiff's mental health symptoms were improving. Tr. 31. Plaintiff argues that any improvement was simply part of a longstanding pattern of waxing and waning symptoms. An ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ cited two records that documented improvement. The first record, written by psychologist Dr. Jonathan Rabon in November 2013, does state that plaintiff's "functional ability has improved." Tr. 778. However, it goes on to state that "[c]onsistent symptom reduction has not yet been achieved, and she has at times had difficulty restraining destructive impulses." Tr. 778. The second record, written by Dr. Rabon in January 2014, includes a checked box classifying plaintiff's mental health issues as "Resolving/Resolved." Tr. 808. The first record is, at best, weak evidence of symptom improvement. The second record is stronger evidence of symptom improvement, but it, like the first record, contains no specific discussion of functional limitations. Indeed, Dr. Rabon later would state in a written evaluation that he was unable to provide *any* assessment of plaintiff's specific functional limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, or adaptation. Tr. 815–17.

The ALJ apparently considered this evidence of improvement to be inconsistent with plaintiff's testimony about her mental limitations. But the ALJ did not explain which portions of plaintiff's testimony were inconsistent with the evidence of unquantified improvement with

treatment. Certain statements would be plainly inconsistent with such evidence — for example, if plaintiff had stated that she had experienced no improvement at all with treatment. But the ALJ identified no such statements. The purported inconsistency between plaintiff's symptom testimony and Dr. Rabon's documentation of improvement is therefore not a clear, convincing reason to discredit plaintiff's testimony.

Fifth, the ALJ found plaintiff's allegations about symptom severity inconsistent with her activities of daily living. Tr. 31. The ALJ cited plaintiff's ability to walk several miles a day; dress, bathe, and feed herself; perform basic cleaning and organization; spend time at the library and community college; and clean up trash around the homeless camp. The ALJ permissibly found that activity level inconsistent with plaintiff's testimony about her physical pain and related limitations. However, there is no apparent inconsistency between those activities and plaintiff's mental limitations, which appear primarily to relate to interpersonal difficulties, concentration, and distractibility.

In sum, the ALJ provided several clear, convincing reasons to discredit plaintiff's statements about her physical limitations. Dr. Webster's opinion that plaintiff exaggerated her back and leg problems, the ALJ's observation that plaintiff opened a heavy door during the hearing, and the inconsistencies between the alleged extent of plaintiff's physical pain and her daily activities adequately support the ALJ's decision to give limited weight to plaintiff's testimony about her physical symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that the ALJ's treatment of symptom testimony may be affirmed even if some of the ALJ's reasons for rejecting that testimony were erroneous).

By contrast, the ALJ did not provide sufficient reasons to reject plaintiff's statements about her mental limitations. The ALJ did not explain which portions of plaintiff's testimony

Page 13 – OPINION AND ORDER

about mental limitations were inconsistent either with Dr. Rabon's documentation of symptom improvement or with plaintiff's daily activity level. Moreover, Dr. Rabon did not quantify the improvement or provide any opinion about the extent of plaintiff's specific, functional limitations. The ALJ's treatment of plaintiff's mental-health symptom testimony is not supported by substantial evidence.

## II. *Medical Opinion Evidence*

Plaintiff next challenges the ALJ's treatment of the medical evidence. Specifically, she asserts the ALJ erred in (1) silently disregarding the opinions of plaintiff's treating orthopedist, physiatrist, and pain specialist; (2) rejecting Dr. Webster's lifting limitation without sufficient justification; (3) rejecting a portion of Dr. Rabon's opinion without considering the consistency between that opinion and other evidence in the record; and (4) partially discrediting the opinion of an examining physician, Luke Patrick, without giving sufficient reasons for that decision.

When the opinion of a treating or examining physician is contradicted by other evidence in the record, the ALJ may reject the treating or examining source's opinion only for "specific and legitimate" reasons supported by substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). When evaluating the "intensity and persistence" of a claimant's symptoms, the ALJ is bound to "consider all of the available evidence." 20 C.F.R. § 404.1529(a).

### A. *Evidence of Plaintiff's Musculoskeletal Pain*

The ALJ's decision contains no discussion of medical records from Kathryn Schabel, MD (plaintiff's treating orthopedist), Mark Kellgren, MD (plaintiff's treating pain specialist), or Jeffrey Degen, MD (plaintiff's treating physiatrist). Defendant argues that any error in failing to discuss those records was harmless.

Page 14 – OPINION AND ORDER

I agree that the failure to discuss the medical records from Dr. Schabel and Dr. Kellgren was, at most, harmless error. The records express no opinion regarding specific functional limitations. Moreover, although the records confirm a connection between plaintiff's pain and anteversion, Dr. Schabel and Dr. Kellgren both recommend relatively conservative treatment.

The failure to address Dr. Degen's opinion, however, is different. Dr. Degen completed a five-page new patient evaluation in June 2012, after the first disability decision was rendered. Tr. 707–11. Dr. Degen completed a thorough physical examination, documenting bilateral intoeing, significant crepitus and popping in the knees and ankles, and osteoarthritis of the knee. Based on those findings, Dr. Degen opined that plaintiff "will have a difficult time being competitive for work[.]" Tr. 710. Dr. Degen's findings of impairment and opinion on the ultimate issue of disability conflict with the milder findings documented elsewhere in the record. The ALJ had a duty to resolve that conflict. Moreover, although the ALJ need not defer to a medical source opinion regarding the ultimate issue of disability, she nonetheless must consider the opinion — including considering "an assessment, based on objective medical evidence, of [the claimant's] likelihood of being able to sustain full-time employment[.]" *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). The ALJ did not discuss Dr. Degen's evaluation at all and therefore failed to provide legally sufficient reasons to discredit Dr. Degen's opinion.

B.    *Lifting Restriction*

The ALJ gave "some weight" to Dr. Webster's opinion and incorporated the majority of Dr. Webster's assessed postural limitations into the RFC. Tr. 33. However, the ALJ found there was no objective basis for Dr. Webster's opinion that plaintiff should be limited to carrying only ten pounds occasionally. In particular, the ALJ cited the absence of evidence that plaintiff's ability to lift had changed significantly since the prior disability denial.

Dr. Webster did not tie the lifting restriction to any objective part of her examination and the connection to any objective finding is unclear from the face of the record. The absence of such a connection is a specific, legitimate reason to discount the lifting restriction. Particularly in view of the absence of any lifting restrictions in the prior RFC and the presumption of continuing nondisability, the ALJ did not err in declining to adopt Dr. Webster's lifting restriction.

## C. *Dr. Rabon's Opinion*

Plaintiff faults the ALJ for failing to credit Dr. Rabon's statement that she had not yet achieved consistent symptom reduction in November 2013. However, as defendant points out and as discussed in Section I of this opinion, Dr. Rabon specifically declined to assess any specific functional limitations for plaintiff. Moreover, the November 2013 statement conflicts with Dr. Rabon's January 2014 notation that plaintiff's problems were resolved or resolving. This analysis is not affected by the records from LifeWorks NW. Plaintiff argues that those case notes corroborate Dr. Rabon's report of persistent symptoms, but the LifeWorks NW notes state that, as of January 2012, services would be terminated because "[c]lient very much agrees that she has accomplished the goals she worked on." Tr. 670. The ALJ did not err in failing to credit Dr. Rabon's November 2013 statement.

## D. *Dr. Patrick's Opinion*

Finally, plaintiff challenges the ALJ's treatment of the opinion of Dr. Patrick. Dr. Patrick performed a psychodiagnostic evaluation in April 2013. Tr. 753. He opined that plaintiff's attention and concentration are "mildly to moderately impaired," that her persistence "will vary appreciably with the type of task," and that she "will show consistent impairment with appropriate social interaction." The ALJ gave Dr. Patrick's opinion "some weight," explaining

Page 16 – OPINION AND ORDER

that he offered no specific functional limitations, but that the RFC was consistent with Dr. Patrick's objective findings on examination. Tr. 33. I find no error in the treatment of Dr. Patrick's opinion. Dr. Patrick did not quantify his statements about plaintiff's restrictions in concentration, persistence, or social interaction. The RFC contains a restriction to address some limitation in each of these errors. The ALJ appears to have fully adopted Dr. Patrick's opinion.

III. *Lay Witness Statements*

Next, plaintiff asserts that the ALJ erred in discrediting the statements of several lay witnesses. In general, lay witness testimony regarding a claimant's symptoms is competent testimony that an ALJ must consider. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (citing *Sprague v. Bowen*, 812 F.3d 1226, 1232 (9th Cir. 1987)). In order to discount lay witness's testimony, the ALJ must provide reasons that are germane to each witness. *Id.*

Shawn Wechter, plaintiff's friend, testified at the heating. He has known plaintiff for four years. The entire time he has known her, she has been in "some kind of pain," either in her lower back or in her feet. Tr. 78. Plaintiff has a "short fuse." Tr. 78. She is very outspoken and intelligent but the slightest social problem will provoke a conflict. Tr. 79. The ALJ gave "some weight" to Mr. Wechter's testimony. Tr. 34. The ALJ credited Mr. Wechter's statements regarding interaction with the public because they were consistent with the record and based on his direct observation. However, she discredited Mr. Wechter's statements about plaintiff's physical pain as inconsistent with the medical evidence and with plaintiff's presentation at the hearing. Although the ALJ's reasons could have been more clearly explained, it is apparent when reading the decision as a whole that the ALJ was referring back to her evaluation of plaintiff's symptom testimony, including plaintiff's ability to open the heavy door and the evidence of symptom exaggeration documented by Mr. Webster. Those are germane reasons

Page 17 – OPINION AND ORDER

sufficient to support the rejection of Mr. Wechter's testimony about plaintiff's physical impairments.

Vin Sorenson and Kirsten Martin completed lengthy forms that appear to have been prepared by plaintiff based on Social Security listing 12.06. *See* Tr. 448–53. The ALJ permissibly gave those opinions less weight because neither Mr. Sorenson nor Ms. Martin is competent to assess the clinical criteria from that listing, such as autonomic hyperactivity, recurrent panic attacks, or autistic thinking. Moreover, the ALJ permissibly found the "marked difficulties" Mr. Sorenson and Ms. Martin assessed in all areas inconsistent with the medical evidence elsewhere in the record. However, that does not mean that the ALJ was free to disregard the direct observations Mr. Sorenson and Ms. Martin included in their detailed responses to the questionnaire. For example, the ALJ provided no reason germane to Mr. Sorenson to reject his statement that "[a]ny time there is a little bit and I mean just the tiniest smidge of drama, [plaintiff] goes from somewhat normal to out of control/non-human bonkers taking things to the extreme." Tr. 448. Similarly, the ALJ provided no reason to germane to Ms. Martin to reject her observation that plaintiff "often loses [her] temper and attacks others if set off." Tr. 452.

Shelby Abbott submitted a two-page letter to the ALJ. Tr. 501–02. Ms. Abbott, who has known plaintiff for four years, stated that plaintiff "is set off by people in general" and that she will "lose her temper whether she is dealing directly with people or just in their general vicinity." Tr. 501. Ms. Abbott also noted inappropriate social behavior such as sticking gum in the locks of cars, walking in front of an oncoming car to get it out of the bus lane, intervening in the middle of a physically violent domestic dispute, and confronting others with weapons. Tr. 502. Ms. Abbott described plaintiff's physical limitations, stating that when helping with housework,

Page 18 – OPINION AND ORDER

plaintiff often will "seize up" and be rendered "immobile." Tr. 502. The ALJ gave "significant weight" to Ms. Abbott's firsthand observations of plaintiff's interactions with others, but little weight to the statements about physical functioning because Ms. Abbott did not quantify the limitations and the symptoms described were inconsistent with findings on medical examination. I find no error in the ALJ's treatment of Ms. Abbott's statements.

IV. *Formulation of the RFC*

Plaintiff contends that a properly formulated RFC should have included a ten-pound lifting restriction, additional restrictions regarding concentration and persistence, and additional restrictions regarding social functioning. Based on the foregoing analysis, I find no error with respect to the lifting restriction or concentration restriction. However, I conclude that the ALJ erred with respect to social functioning.

The record contains ample documentation of interpersonal difficulty. Lay witness statements described above (which the ALJ credited) and plaintiff's own testimony (which the ALJ did not provide legally sufficient reasons to reject) describe plaintiff's inability to make decisions about appropriate social interaction and confrontation. Corroboration for those difficulties exists elsewhere in the record as well. *See*, *e.g.*, Tr. 513 (letter from Ms. Martin describing plaintiff's use of "shameful manipulation through aggressive phrases and actions toward other students" as well as "outbursts" and "quick anger"); Tr. 755 (Dr. Patrick predicting "consistent impairment with appropriate social interaction").

The RFC restricts plaintiff to "occasional, brief, superficial interactions with the general public" but permits up to "frequent interactions with coworkers and supervisors." Tr. Tr. 29–30. The ALJ did not explain how frequent interpersonal contact is consistent with the credited evidence of record regarding plaintiff's social difficulties. The absence of any such explanation

Page 19 – OPINION AND ORDER

is particularly notable in view of the ALJ's decision to give significant weight to lay witness statements describing plaintiff's conflicts with people across a variety of circumstances. Additionally, there is evidence in the record that plaintiff was terminated from at least one job due to difficulties interacting with coworkers and supervisors. In February 2009, plaintiff sent a long email rant about her "LOUSY market MANAGER" to her direct supervisor with Dave's Killer Bread. Tr. 460. In response, the supervisor replied simply that "[i]t is clear that this situation is untenable and that this company will no longer be requiring your services." Tr. 461.

The ALJ's determination that plaintiff could have up to frequent interactions with supervisors and coworkers is not supported by substantial evidence. Based on the lay witness statements credited by the ALJ and other evidence in the record, plaintiff will experience difficulty interacting with others appropriately on a consistent basis, and those difficulties will not be limited to interactions with the general public.

V.    *Type of Remand*

The only remaining question is whether to remand for further proceedings or an immediate award of benefits. Pursuant to the Ninth Circuit's "credit-as-true" doctrine, I must undertake a four-part inquiry to answer that question. First, for the reasons described herein, I conclude that the ALJ erred by (1) failing to provide clear and convincing reasons to discredit plaintiff's testimony about her mental limitations; (2) silently rejecting the opinion of Dr. Degen, thereby discrediting the opinion of an examining physician without specific, legitimate justification; and (3) failing to include any limitations in the RFC addressing plaintiff's difficulty with social interaction as it applies to coworkers and supervisors. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Second, I must determine whether the record has been fully developed and whether further administrative proceeds would be useful. *Id.* Further development would be useful with respect to Dr. Degen's opinion because his opinion conflicts with the opinions of many other doctors in the record. However, the same cannot be said regarding plaintiff's difficulties with social interactions. Credited lay witness statements and other evidence in the record consistently demonstrate that plaintiff has pervasive interpersonal difficulties, and the record as a whole shows that those difficulties would manifest with supervisors and coworkers as well as with the general public. It is not clear what purpose further development of the record would serve with respect to plaintiff's difficulties with social interaction.

Moreover, at the third step of the inquiry, I conclude that "if the improperly discredited evidence" regarding plaintiff's mental limitations were credited as true, "the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1021. At plaintiff's hearing, the vocational expert testified that a "sustained pattern" of conflicts with coworkers or supervisors would be unsustainable because the employee would be written up and eventually fired. Tr. 98–100. Crediting plaintiff's testimony as true and combining it with the consistent accounts of lay witnesses, the record compels the conclusion that plaintiff would have a sustained pattern of interpersonal conflicts at work. Such a pattern mandates a finding of "disabled."

Finally, I must consider whether the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted). There is no such serious doubt with respect to plaintiff's difficulties with social interaction. As noted, those who have observed

plaintiff firsthand have documented remarkably similar, consistent problems in interpersonal relationships with strangers, acquaintances, and friends.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits. Because the prior disability determination was not reopened and remains binding, plaintiff's period of disability began May 10, 2012, the day after the prior denial.

IT IS SO ORDERED.

Dated this __ day of May 2017.

Ann Aiken
United States District Judge